18193

Thelma COLLINS, Respondent, v. William A. THOMAS, Appellant

(135 S. E. (2d) 754)

*Messrs. McDonald & McDonald,* of Winnsboro, and *Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant,*

Messrs. *George F. Coleman* and *John A. Martin,* of
Winnsboro, *for Respondent,*

Messrs. *McDonald & McDonald,* of Winnsboro, and
*Nelson, Mullins, Grier & Scarborough,* of Columbia, *for
Appellant, in Reply,*

April 7, 1964.

BRAILSFORD, Justice.

In this action for damages for personal injuries sustained
in an automobile collision, the trial judge included in his
charge to the jury an instruction on unavoidable accident
as follows:

"A defendant cannot be held liable for what is called a
mere accident or an unavoidable accident, which may be
defined as an occurrence not proximately due to, or caused
by, either in whole or in part, any negligence or willfullness
on the part of any person. In other words, such occurrence
as is free from fault arising from human agency."

After a verdict for the defendant the trial judge granted
plaintiff's motion for a new trial upon the ground that the
foregoing instruction was inapplicable to any issue raised
by the pleadings or evidence and should not have been given.
Relying upon such cases as *Wright v. Harris,* 228 S. C.
144, 89 S. E. (2d) 97, which hold that it is reversible error
to charge a correct principle of law as governing a case
where such principle is inapplicable to the issues on trial,

the judge specifically held that the error in the charge was prejudicial. The defendant appealed from the order granting a new trial, the error assigned being that the instruction stated a correct principle of law which was applicable to the issues arising on the evidence. Therefore, this appeal turns on the single issue of whether the trial judge erred in reaching the contrary conclusion. No contention has been made that the giving of this instruction, if erroneous, was harmless.

By the great weight of authority in this country it is error to instruct the jury on unavoidable accident in an automobile collision case unless the evidence raises a genuine issue upon that question. While there is much conflict and some confusion in the decisions, there is little dissent from the proposition that the instruction is inappropriate where the evidence shows clearly that the accident was caused or contributed to by the negligence of one or more of the parties. See the comprehensive treatment of the numerous decisions on the subject, none from this jurisdiction, in the annotation, Unavoidable Accident instruction, 65 A. L. R. (2d) 12.

On a clear day, with no obstruction to vision, in a 25-mile per hour speed zone, the defendant, a teen-age boy accompanied by his father, drove his Chrysler automobile into the rear of plaintiff's Ford, which had stopped on the highway behind other traffic at a railway crossing.

Defendant laid down skid marks which the investigating patrolman estimated to be 38 feet long. However, defendant's father, allowing for the length of the automobile, estimated that the distance traveled after the skid began was about 15 feet. The force of the collision drove plaintiff's automobile forward into the rear of a preceding car. Photographs in evidence show that the front of plaintiff's automobile was extensively damaged by this second impact.

Plaintiff was a passenger in her automobile which was being driven by her young son. They both testified that

they had traveled for some distance following a house trailer and a Pontiac automobile. As they approached Chester, South Carolina, from the north, they made a left turn on a bypass. Within about 300 feet, the preceding vehicles came to a stop at a railroad crossing and plaintiff's automobile came to a gradual stop behind the Pontiac. After an interval during which the leading vehicles began to move forward and plaintiff's son had shifted gears, the collision occurred.

The testimony of the defendant and his father was flatly contradictory of that of the plaintiff and her son as to the nature of the stop made by plaintiff's car. They testified that they had traveled for about twenty miles in a procession behind plaintiff's automobile, the Pontiac and the house trailer before reaching the Chester bypass. Each of the vehicles came practically to a stop at the entrace to the bypass. Neither the defendant nor his father noticed the other vehicles stopping ahead of them in the highway until, suddenly, the front of the Ford went down and the rear end went up as it made an abrupt stop. Neither noticed brake lights on the Ford or on the other vehicles. The defendant and his father estimated their speed at 20 miles per hour and stated that they were traveling approximately two car lengths behind plaintiffs' vehicle. They assigned as the cause of the collision the sudden stop of plaintiff's automobile and the presence of sand and gravel on the road surface which, according to them, caused their car to skid.

Defendant's counsel argues that the condition of the highway could reasonably have been found to have caused the accident, without negligence on the part of either party; therefore, the instruction on unavoidable accident was properly included. Even if we assume that the presence of sand and gravel on the road surface decreased traction so as to make the brakes less effective in bringing the automobile to a stop, no reasonable inference can be drawn from the evidence that this collision occurred without negligence on the part of either driver. An emergency situation was cre-

ated by the negligence of one or both drivers before the presence of sand and gravel on the road surface could possibly have been a factor. This is made clear by the following excerpts from the testimony. The defendant's father testified:

"Q. What, if anything, happened after you made your turn?

"A. All of a sudden I saw this Ford stop in front of us, and I hollered for my son to 'Stop'—'Stop'. He applied all the brakes he had, and he skidded right on into the Ford.

"Q. Did you see any warning or signal from the Ford, indicating it was going to stop?

"A. No, sir."

\* \* \*

"Q. What happened when he applied his brakes?

"A. There was a lot of sand and gravel washed on the pavement, and when he hit that sand and gravel he skidded."

The defendant testified:

"Q. Could you see the railroad tracks from where you were at that time?

"A. No, sir; the trailer was blocking them out.

"Q. Then what happened?

"A. All of a sudden the Ford front went down and the tail went up.

"Q. How far were you from the Ford at that time?

"A. About two-car lengths.

"Q. Do you recall seeing any light signal or signal of any kind?

"A. I don't recall it.

"Q. What is your recollection of what happened?

"A. I saw the Ford with the front going down and the tail coming up.

"Q. Then what did you do?

"A. I slammed the brakes on.

"Q. Hard, or how?

"A. Just as hard as I could.

"Q. Then what happened?

"A. I didn't slow down much. I hit some sand and skidded along in the sand."

The defendant's automobile was equipped with good tires and efficient brakes. When these were applied with force, skidding was inevitable. Compare *Thompson v. Brewer*, 225 S. C. 460, 466, 82 S. E. (2d) 685, 687. Any conclusion that without the presence of sand and gravel on the road surface the car would have stopped short of the collision point must rest entirely on speculation and conjecture. We agree with the able and experienced trial judge that no genuine issue as to unavoidable accident was raised by the evidence. Therefore, the error assigned by the exceptions, which, as has been seen, rests upon a different view of the evidence, is without merit.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.